UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PARAGON MICRO, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 14 C 00203 |
| v. ) | |
| ) | Chief Judge Ruben Castillo |
| NICHOLAS J. BUNDY and ) | |
| NJB SALES, INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Paragon Micro, Inc. ("Plaintiff") brings this action against Nicholas J. Bundy and NJB

Sales, Inc. ("NJB") (collectively, "Defendants") alleging destruction of data in violation of the

Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*; fraudulent computer tampering in

violation of 720 Ill. Comp. Stat. 5/17-51; misappropriation of trade secrets in violation of the

Illinois Trade Secrets Act, 765 Ill. Comp. Stat. 1065/1 *et seq.*; deceptive trade practices in

violation of the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/2 *et*

*seq.*, and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat.

505/1 *et seq.*; and multiple common law fraud and tort claims. Presently before the Court is

Defendants' motion to compel arbitration and dismiss this action or, alternatively, to stay this

action pending arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3-4. For

the reasons set forth below, the Court grants Defendants' motion.

## RELEVANT FACTS

Plaintiff is an Illinois corporation with its principal place of business in Lake Zurich,

Illinois. (R. 1, Compl. ¶ 2.) Bundy is a resident of Lake Zurich, Illinois, and is also the

president, director, and sole shareholder of NJB, an Illinois corporation with its principal place of business in Lake Zurich, Illinois. (*Id.* ¶¶ 3-4.)

Plaintiff sells technology products and services to businesses and educational and government institutions. (*Id.* ¶ 8.) Plaintiff sells its products and services through its Account Representatives. (*Id.* ¶ 9.) Account Representatives have access to a portion of Plaintiff's confidential information; specifically, information related to Plaintiff's product cost. (*Id.* ¶¶ 9, 12.) Other types of confidential information include, for example, trade secrets, marketing and sales programs, customer and supplier information, pricing information, and profit margins. (*Id.* ¶ 12.) Account Representatives use the product cost information for several tasks, including to develop pricing and margin strategies, to negotiate sales, to set prices, and to make decisions regarding Plaintiff's customer relationships. (*Id.* ¶ 9.) In an effort to protect its confidential information, Plaintiff requires its employees and contractors to sign agreements containing confidentiality provisions. (*Id.* ¶ 13.)

In or about June 2008, Plaintiff hired Bundy as an Account Representative. (*Id.* ¶ 14.) In this position, Bundy was entrusted with a portion of Plaintiff's confidential information. (*Id.*) This information included pricing, terms, and cost information for customers to whom Bundy was assigned. (*Id.*) In connection with his employment relationship with Plaintiff, Bundy executed an Independent Contractor Agreement (the "Agreement") on or about June 18, 2008. (*Id.*) Section 4 of the Agreement contains a confidentiality provision that states: "Contractor agrees that he/she will at no time during the period that this Agreement remains in effect or after the termination of this Agreement, whether that termination is voluntary, involuntary, for cause, or otherwise, disclose any confidential information of Company gained

2

by him/her." (R. 1-1, Ex. A, Agreement at 2-3.) Section 5 of the Agreement contains a no-solicitation provision that states:

> During the period that this Agreement remains in effect and for a period of three (3) months following the termination of this Agreement for any reason whatsoever, Contractor shall not: (a) directly or indirectly . . . solicit business from or do business with any actual or prospective customer or client which Contractor dealt with on behalf of the Company[.]

(*Id.* at 3.) Additionally, section 10 of the Agreement contains an arbitration provision that states: "Any and all disputes shall be submitted to and settled by final and binding arbitration in Chicago, Illinois, pursuant to the rules of the American Arbitration Association then in effect." (*Id.* at 5.)

On December 22, 2008, Bundy incorporated NJB and began using this company to perform his duties as Plaintiff's Account Representative. (R. 1, Compl. ¶ 17.) Bundy requested that Plaintiff pay the commissions Bundy earned from his sales of Plaintiff's products and services to NJB, and Plaintiff agreed to do so. (*Id.*) Plaintiff demanded that Bundy keep Plaintiff's information confidential, and Bundy agreed to Plaintiff's demand. (*Id.* ¶ 18.) Plaintiff alleges that because Bundy was, and still is, NJB's sole shareholder and operator, NJB was aware that Plaintiff considered its information to be confidential. (*Id.*)

Plaintiff alleges that beginning in late December 2013, Bundy abused the trust that Plaintiff placed in him. (*Id.* ¶¶ 1, 19.) Specifically, Plaintiff alleges that Bundy began diverting sales from Plaintiff to NJB, falsifying Plaintiff's account profile with an anti-virus software vendor to divert Plaintiff's customer information to NJB, falsifying sales transactions to conflate his commission, deleting and destroying Plaintiff's information off of Plaintiff's computer network to conceal his deception and to gain an unfair advantage over Plaintiff's customers, and misappropriating Plaintiff's confidential information. (*Id.* ¶¶ 1, 19-25.)

3

On January 3, 2014, Plaintiff terminated its employment relationship with Bundy and NJB and demanded that Bundy immediately return all of its confidential information that Bundy had in his possession. (*Id.* ¶ 26.) Plaintiff alleges that Bundy refuses to return its confidential information. (*Id.* ¶ 27.) Plaintiff alleges that Defendants continue to exploit this confidential information to solicit Plaintiff's customers to do business with NJB rather than with Plaintiff. (*Id.* ¶ 29.)

## PROCEDURAL HISTORY

Plaintiff commenced this action on January 13, 2014. (R. 1, Compl.) Plaintiff asserts eleven claims. (*Id.*) It asserts four claims against Bundy alone: breach of fiduciary duty (Count I); destruction of data on Plaintiff's computer in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.* (Count II); computer tampering in violation of 720 Ill. Comp. Stat. 5/17-51 (Count III); and common law fraud (Count VI). (*Id.* ¶¶ 33-47, 62-65.) Plaintiff asserts another seven claims against both Defendants: misappropriation of trade secrets in violation of the Illinois Trade Secrets Act, 765 Ill. Comp. Stat. 1065/1 *et seq.* (Count IV); unfair competition (Count V); conversion (Count VII); unjust enrichment (Count VIII); tortious interference with prospective advantage (Count IX); misrepresentations in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/2 *et seq.* (Count X); and misrepresentations in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq.* (Count XI). (*Id.* ¶¶ 48-61, 66-98.)

On January 22, 2014, Defendants moved to compel arbitration and dismiss this action or, alternatively, to stay these proceedings pending arbitration. (R. 18, Defs.' Mot.) Defendants argue that the Court must compel arbitration because a written agreement to arbitrate exists between the parties, Plaintiff's disputes fall within the scope of the arbitration agreement, and

Plaintiff refuses to comply with the arbitration agreement. (*Id.* at 4-9.) Plaintiff filed a response to Defendants' motion on February 11, 2014, (R. 30, Pl.'s Resp.), and Defendants filed a reply on February 20, 2014, (R. 35, Defs.' Reply). On February 24, 2014, Plaintiff moved to file a sur-reply, attached *instanter*, in opposition to Defendants' motion. (R. 37, Pl.'s Mot. Sur-Reply.) The Court grants Plaintiff's motion to file a sur-reply and considers its sur-reply in ruling on Defendants' motion to compel arbitration, which is presently before the Court.

## LEGAL STANDARDS

The FAA reflects a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). The FAA operates to place arbitration agreements on the same footing as other contracts to ensure that judiciaries enforce agreements to arbitrate. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991); *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 219 (1985). The relevant language of the FAA provides that an arbitration clause in a contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Courts are to uphold and enforce applicable arbitration agreements according to their terms unless they are invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Concepcion*, 131 S. Ct. at 1746 (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

The FAA permits a federal district court to compel arbitration when there is (1) a written agreement to arbitrate; (2) a dispute covered by or within the scope of a valid arbitration agreement; and (3) a refusal to arbitrate. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). Parties may only be compelled to arbitrate those issues they have agreed to

arbitrate. *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)). Federal courts must rely on state contract law governing the formation of contracts to decide whether the parties have agreed to arbitrate a particular issue. *James v. McDonald's Corp.*, 417 F.3d 672, 677 (7th Cir. 2005) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). The party seeking to invalidate or oppose the arbitration agreement bears the burden of demonstrating that the arbitration agreement is unenforceable and that the claims are unsuitable for arbitration. *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000).

Once a court is satisfied with its determination that the parties have agreed to arbitrate the issues at hand, the court must compel arbitration and "shall on application of one of the parties stay the trial of action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. §§ 3, 4. The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25. A request for arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am.*, 363 U.S. at 582-83.

## ANALYSIS

Plaintiff argues that Defendants' motion to compel arbitration should be denied because: (1) no valid and enforceable agreement to arbitrate exists between the parties; (2) NJB cannot enforce the arbitration provision; (3) Plaintiff's claims are outside the scope of the arbitration provision; and (4) Defendants have waived any right to seek arbitration. (R. 30, Pl.'s Resp. at 1-2.) The Court will address each of Plaintiff's arguments in turn.

6

**I.     Whether the Agreement's arbitration provision is valid and enforceable**

Federal courts look to state contract law to determine whether a valid arbitration

agreement exists between parties. *Michalski v. Circuit City Stores, Inc.*, 177 F.3d 634, 636 (7th

Cir. 1999) (quoting *Koveleskie v. SBC Capital Mkts., Inc.*, 167 F.3d 361, 366-67 (7th Cir. 1999)).

In the present case, the Court looks to the contract law of Illinois, the state where all relevant

events in this dispute arose. *See Koveleskie*, 167 F.3d at 367 (citing *Gibson v. Neighborhood*

*Health Clinics, Inc.*, 121 F.3d 1126, 1130 (7th Cir. 1997)). Under Illinois law, if the terms of a

contract are clear and explicit, a court must enforce the contract as written. *Rakowski v. Lucente*,

472 N.E.2d 791, 794 (Ill. 1984). Here, the Agreement, which was signed by Plaintiff and Bundy,

includes an arbitration provision that clearly and explicitly provides that "[a]ny and all disputes

shall be submitted to and settled by final and binding arbitration[.]" (R. 1-1, Ex. A, Agreement

at 5.) Plaintiff argues that this arbitration provision is not valid and enforceable, however,

because the Agreement, which contains the arbitration provision, was mutually and voluntarily

terminated in late 2008 when Bundy resigned and began performing services through NJB as

Plaintiff's Account Representative. (R. 30, Pl.'s Resp. at 6.) Plaintiff argues that the Agreement

did not provide that the arbitration provision would survive termination. (*Id.*) Plaintiff further

argues that the terminated Agreement did not govern the subsequent relationship between itself

and NJB. (*Id.*)

In the complaint, however, Plaintiff alleges that Bundy incorporated NJB in late 2008 and

"[s]hortly thereafter, Bundy began performing his duties as a Paragon Micro Account

Representative through NJB Sales." (R. 1, Compl. ¶ 17.) Plaintiff additionally alleges in the

complaint that it did not terminate its relationship with Bundy until January 3, 2014. (*Id.* ¶ 26.)

The general rule in this Circuit provides that a district court may consider additional facts set

forth in a plaintiff's responsive brief as long as those facts are consistent with the complaint. *See Smith v. Knox Cnty. Jail*, 666 F.3d 1037, 1039 (7th Cir. 2012); *Help At Home, Inc. v. Med. Capital LLC*, 260 F.3d 748, 752-53 (7th Cir. 2001) (quoting *Hrubec v. Nat'l R.R. Passenger Corp.*, 981 F.2d 962, 963-64 (7th Cir. 1992)). The Agreement's termination in late 2008, however, is not a fact that is consistent with the complaint. The majority of Plaintiff's claims hinge on the existence of the Agreement, particularly the no-solicitation and confidentiality provisions of the Agreement.[1] Plaintiff alleges in its complaint that beginning in late December 2013, Bundy began to, among other things, divert sales from Plaintiff to NJB and to misappropriate Plaintiff's confidential information. (R. 1, Compl. ¶¶ 19-29.) If the Agreement terminated in late 2008, Plaintiff would have no basis to file claims against Bundy resulting from his "abuse[] [of] the significant trust placed in him" as an Account Representative. (*Id.* ¶ 1.)

Additionally, Plaintiff attaches to its complaint as Exhibit D a copy of the letter its counsel sent to Bundy and NJB dated January 3, 2014. (R. 1-4, Ex. D, Termination Letter.) In this letter, counsel states that Bundy's "actions constitute a breach of [his] Independent Contractor Agreement ("Agreement") with Paragon Micro" and that Bundy was "hereby notified that [he] (and [his] company, NJB) [were] terminated, for cause, as an independent contractor of Paragon Micro effective immediately." (*Id.* at 1.) The Court may consider this exhibit along with the allegations in the complaint when addressing Defendant's motion. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (it is appropriate to "consider documents attached to the complaint as part of the complaint itself" when deciding on a motion to dismiss (citing *Int'l Mktg., Ltd. v. Archer-Daniels-Midland Co.*, 192 F.3d 724, 729 (7th Cir. 1999)));

---

[1] The Agreement explicitly provides that the confidentiality provision survives termination of the Agreement. However, Plaintiff's claims also rely on other provisions of the agreement that do expire.

*Massey v. Merrill Lynch & Co., Inc.*, 464 F.3d 642, 645 (7th Cir. 2006). When "an exhibit conflicts with the allegations of the complaint, the exhibit typically controls." *Massey*, 464 F.3d at 645 (citing *Centers v. Centennial Mortg., Inc.*, 398 F.3d 930, 933 (7th Cir. 2005)). Plaintiff cannot now allege that the Agreement was terminated in late 2008 because the letter it attached to its complaint, dated January 3, 2014, contradicts that allegation. The Court thus finds that the Agreement was not terminated in late 2008 and that the arbitration provision is valid and enforceable.

Even if the Agreement was terminated in late 2008, however, the arbitration provision would still be valid and enforceable. "[A]rbitration provisions survive the termination or expiration of the agreement in which they are found unless the agreement expressly provides otherwise." *Abbott Labs. v. Qiagen Gaithersburg, Inc.*, No. 10 CV 712, 2010 WL 1539952, at *2 (N.D. Ill. Apr. 15, 2010) (citing *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 204 (1991)); *see also Hoenig v. Karl Knauz Motors, Inc.*, No. 13 C 0866, --- F. Supp. 2d ---, 2013 WL 5701400, at *6 (N.D. Ill. Oct. 16, 2013) (rejecting plaintiff's argument that the arbitration agreement expired upon her resignation because the agreement contained no explicit expiration date); *Shipp v. XA, Inc.*, No. 05 C 1193, 2006 WL 2583720, at *7 (N.D. Ill. Aug. 31, 2006) (the terminated agreement contained no express language regarding the survivability of the arbitration provision and so the court found that the broad language of the arbitration provision encompassed post-termination claims). Here, the Agreement does not expressly state that the arbitration provision will not survive termination. Thus, even if the Agreement was terminated in late 2008, the arbitration provision would survive termination.

Accordingly, the Court finds that the arbitration provision is valid and enforceable as between Plaintiff and Bundy.

## II.     Whether NJB may properly enforce the arbitration provision

Plaintiff argues that even if the arbitration provision is valid and enforceable, "Plaintiff has not agreed to arbitrate its claims against NJB Sales and, therefore, cannot be compelled to do so." (R. 30, Pl.'s Resp. at 8.) Defendants argue that the doctrine of equitable estoppel, the third-party beneficiary doctrine, and the principles of agency require Plaintiff to arbitrate its claims against NJB, a non-signatory to the Agreement. (R. 18, Defs.' Mot. at 4-7.)

"[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers*, 363 U.S. at 582. To determine whether parties have agreed to arbitrate a matter, federal courts generally apply state-law principles governing the formation of contracts. *James*, 417 F.3d at 677. When a valid contract exists, however, federal courts may look to applicable federal precedent applying the FAA to determine whether the arbitration provision applies to a non-signatory. *Gersten v. Intrinsic Techs., LLP*, 442 F. Supp. 2d 573, 578 (N.D. Ill. 2006) (collecting cases). "[T]here are five doctrines through which a non-signatory can be bound by arbitration agreements entered into by others: (1) assumption; (2) agency; (3) estoppel; (4) veil piercing; and (5) incorporation by reference." *Zurich Am. Ins. Co.*, 417 F.3d at 687 (citing *Fyrnetics (H.K.) Ltd. v. Quantum Grp., Inc.*, 293 F.3d 1023, 1029 (7th Cir. 2002)). Additionally, a non-signatory may have the right to enforce an arbitration agreement if it is an intended third-party beneficiary to the agreement. *ChampionsWorld, LLC v. U.S. Soccer Fed'n, Inc.*, 487 F. Supp. 2d 980, 987-88 (N.D. Ill. 2007) (citing *IDS Life Ins. Co. v. SunAmerica, Inc.*, 103 F.3d 524, 529 (7th Cir. 1996)).

Defendants argue that the doctrine of equitable estoppel applies in this case because Plaintiff relies upon the Agreement to support all but one of its claims against Bundy and NJB, and because NJB's and Bundy's conduct was substantially intertwined. (R. 18, Defs.' Mot. at 5-

6.) Under the doctrine of equitable estoppel, a non-signatory may compel arbitration in two distinct circumstances: when the signatory references to or presumes the existence of a written agreement in asserting its claims against the non-signatory, and when the signatory raises allegations of "substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract." *Hoffman v. Deloitte & Touche, LLP*, 143 F. Supp. 2d 995, 1004-05 (N.D. Ill. 2001) (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)); *see also Hughes Masonry Co. v. Greater Clark Cnty. Sch. Bldg. Corp.*, 659 F.2d 836, 838-39 (7th Cir. 1981) (finding that the plaintiff was equitably estopped from arguing that the non-signatory could not invoke the arbitration clause because the basis of the plaintiff's claims against the non-signatory were connected to the contract with the arbitration clause); *Affymax, Inc. v. Johnson & Johnson*, 420 F. Supp. 2d 876, 882 (N.D. Ill. 2006).

Plaintiff brings an eleven-count complaint against Defendants, and seven of Plaintiff's claims specifically name NJB. (R. 1, Compl. ¶¶ 48-61, 66-98.) Plaintiff's claims against NJB all stem from Bundy's alleged misconduct "during the course of his work" for Plaintiff as an Account Representative, resulting in a breach of his obligations set forth in the Agreement. (*Id.* ¶¶ 1, 17.) For instance, Plaintiff alleges that Bundy diverted its sales to NJB and misappropriated its confidential information, which constituted direct breaches of the Agreement's confidentiality and no-solicitation provisions. (*Id.* ¶ 1.) Further, Plaintiff's counsel sent a letter to Bundy regarding Bundy's termination, stating that his and NJB's actions "constitute a breach of [his] Independent Contractor Agreement ("Agreement") with Paragon Micro . . . ." (R. 1-4, Ex. D, Jan. 3, 2014 Termination Letter.) The Court thus finds that Plaintiff presumes the existence of the Agreement and relies on the Agreement as grounds for some its

claims against NJB. *See Hoffman*, 143 F. Supp. 2d at 1004-05; *see also Hughes Masonry*, 659 F.2d at 838-39.

Additionally, Plaintiff alleges that Bundy's misconduct commenced in late-December 2013, well after Bundy began working as Plaintiff's Account Representative through NJB in December 2008. (R. 1, Compl. ¶¶ 17, 19.) Plaintiff also acknowledges that NJB "acted as Paragon Micro's Account Representative." (R. 30, Pl.'s Resp. at 6.) Plaintiff alleges that it paid NJB the commissions earned by Bundy's sales of its products. (*Id.* ¶ 17.) Further, in Bundy's termination letter, Plaintiff's counsel states that "[Bundy is] hereby notified that [Bundy] (and [his] company, NJB) are terminated, for cause, as an independent contractor of [Plaintiff]" because of "certain activities engaged in by [Bundy] and [NJB]." (R. 1-4, Ex. D, Termination Letter at 1.) The Court thus finds that Bundy and NJB, in essence, operated as one entity for purposes of serving as Plaintiff's Account Representative and that their alleged misconduct is therefore "substantially interdependent." *See Hoffman*, 143 F. Supp. 2d at 1005.

Accordingly, the Court finds that NJB has the right to enforce the arbitration provision under the doctrine of equitable estoppel. Because the doctrine of equitable estoppel applies in this case, the Court need not address whether NJB could compel arbitration under agency principles or the third-party beneficiary doctrine. Plaintiff would like to deny that the Agreement applies to NJB merely to avoid having to arbitrate its disputes against NJB, but Plaintiff "cannot have it both ways. (It) cannot rely on the contract when it works to its advantage, and repudiate it when it works to (its) disadvantage." *Hughes Masonry,* 659 F.2d at 839 (quoting *Tepper Realty Co. v. Mosaic Tile Co.*, 259 F. Supp. 688, 692 (S.D.N.Y. 1966)).

### III.    Whether Plaintiff's claims fall within the scope of the arbitration provision

Defendants contend that the language of the arbitration provision is very broad and

applies to all of Plaintiff's claims, including its statutory claims. (R. 18, Defs.' Mot. at 7-8.) "To determine the scope of [an arbitration clause], the court must examine both the wording of the particular clause and the terms of the parties' contract." *J & K Cement Constr., Inc. v. Montalbano Builders, Inc.*, 456 N.E.2d 889, 895 (Ill. App. Ct. 2d Dist. 1983). With respect to examining the language of the arbitration provision, the Seventh Circuit has repeatedly held that the language "arising out of" and "relating to" is extremely broad and creates a "presumption of arbitrability" that "reaches all disputes having their origin or genesis in the contract, whether or not they implicate interpretation or performance of the contract per se." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1033-34 (7th Cir. 2012) (quoting *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 642 (7th Cir. 1993)); *see also Kiefer Specialty Flooring*, 174 F.3d at 909-10 (describing an arbitration clause with the language "arising out of or relating to" as "extremely broad and capable of an expansive reach," creating a "presumption of arbitrability"). The plaintiff bears the heavy burden of rebutting the presumptive arbitrability of its claims, and the Court shall not deny arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers*, 363 U.S. at 582-83.

Here, the arbitration provision in the Agreement is unambiguously worded to require that "[a]ny and all disputes shall be submitted to and settled by final and binding arbitration[.]" (R. 1-1, Ex. A, Agreement at 5.) The arbitration provision does not include the language "arising out of" or "relating to" the Agreement, however, the language "any and all disputes" is sufficiently broad to create a presumption of arbitrability. *See Abbott Labs.*, 2010 WL 1539952, at *2 ("The arbitration clause is broadly worded, requiring that 'any' dispute connected to the . . . agreement 'shall be' arbitrated. Such provisions are 'extremely broad and capable of an expansive reach.'"

13

(quoting *Kiefer Specialty Flooring*, 174 F.3d at 909) (internal citations omitted)).  Additionally, any doubts concerning the scope of arbitration must be resolved in favor of arbitration.  *Moses H. Cone*, 460 U.S. at 24-25.

In an effort to rebut this presumption of arbitrability, Plaintiff argues that its claims "neither relate to nor arise from the Agreement" because its claims "arose long after the termination of the Agreement."  (R. 30, Pl.'s Resp. at 8.)  Consequently, Plaintiff argues that its claims fall outside the scope of the arbitration provision.  (*Id.*)  However, as the Court has already established, the Agreement was not terminated in 2008.  Additionally, the language of the arbitration provision is broad enough to include post-termination claims.  *See, e.g., Abbott Labs., 2010 WL 1539952*, at *2 (the language of the arbitration provision was expansive enough to cover a dispute the defendant argued arose after the agreement had terminated); *Shipp*, 2006 WL 2583720, at *7 ("In this case, the Agreement has no express language regarding the survivability of the arbitration provision, but the arbitration provision uses broad phrases such as "any dispute" and "arising out of" or "relate to," all of which evince an intent to submit post-termination claims to arbitration.").  Plaintiff therefore has failed to rebut the presumption of arbitrability.  Accordingly, the Court finds that all of Plaintiff's claims, including its statutory claims, are covered by the arbitration provision because each claim has its "origin or genesis in" the Agreement.  *Gore*, 666 F.3d at 1033-34; *see also Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987) ("This duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights.").

## IV.     Whether Defendants have waived their right to arbitrate

Plaintiff argues that even if its claims fall within the scope of the arbitration provision, Defendants have waived any right to compel arbitration by acting inconsistently with the intent

14

to arbitrate. (R. 30, Pl.'s Resp. at 9-11.) Specifically, Plaintiff argues that Defendants waived their right to arbitrate because they: (1) did not object to Plaintiff's motion for expedited discovery; (2) did not object to Plaintiff's motion for a temporary restraining order; (3) negotiated the terms of the temporary restraining order; and (4) requested an extension to the deadline for Defendants' responses to expedited discovery. (*Id.* at 10.) Defendants argue that they did not waive their right to arbitrate because they filed their motion to compel arbitration nine days after Plaintiff filed the present lawsuit, and Defendants' counsel expressly objected to expedited discovery. (R. 35, Defs.' Reply at 8.) Defendants also assert that Plaintiff's argument for waiver is in direct contravention to statements Plaintiff's counsel made before the Court during status hearings on January 28, 2014 and February 7, 2014. (*Id.* at 8-9.)

A court may refuse to compel arbitration if the party has waived its right to arbitrate. *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods Co.*, 969 F.2d 585, 587 (7th Cir. 1992). The right to arbitrate may be waived expressly or implicitly. *Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753, 756 (7th Cir. 2002). Here, Defendants have not expressly waived their right to arbitrate, so the Court must determine whether they have implicitly done so. The Seventh Circuit has instructed that "[n]o rigid rule exists as to what constitutes a waiver of the right to arbitrate. Instead, the issue depends on the circumstances of each particular case." *St. Mary's*, 969 F.2d at 587-88. The Court must examine the "totality of the circumstances" and determine whether the party seeking arbitration "acted inconsistently with the right to arbitrate." *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.*, 660 F.3d 988, 994 (7th Cir. 2011) (citing *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004)). The diligence, or lack thereof, of the party seeking arbitration is an important consideration in deciding whether there has been a waiver. *Cabinetree of Wisc., Inc. v.*

15

*Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995). Other important factors include whether the party seeking arbitration substantially delayed its request for arbitration, participated in litigation, or participated in discovery. *St. Mary's*, 969 F.2d at 589-91. Additionally, although prejudice to the party resisting arbitration is not required to find waiver, "it is a relevant factor in the totality-of-the-circumstances analysis." *Kawasaki*, 660 F.3d at 994 (citing *St. Mary's*, 969 F.2d at 590)). Because of the strong federal policy favoring enforcement of arbitration agreements, "parties asserting waiver bear a 'heavy burden' and courts should not 'lightly infer' waiver." *St. Mary's*, 969 F.3d at 590.

Here, Defendants filed their motion to compel arbitration without significant delay—nine days after Plaintiff's filing of this lawsuit. (R. 18, Def.'s Mot.); *see Hoenig*, 2012 WL 5701400, at *8 ("In cases where courts have found waiver based on or based in part on delay[,] the delay between the initiation of the suit of the party's pursuit of arbitration has been much greater than [a] three-month delay . . . ."). Defendants also communicated in several ways to Plaintiff and the Court that they sought to arbitrate Plaintiff's disputes: (1) Defendants' counsel sent an email to Plaintiff's counsel on January 14, 2014, requesting to proceed with arbitration, (R. 18-3, Ex. 2, Jan. 14, 2014 Email); (2) Defendants' counsel informed the Court about the existing arbitration provision in the Agreement during a status hearing on January 15, 2014, (R. 31, Jan. 15, 2014 Tr. at 3:5-7); (3) Defendants' counsel sent a letter to Plaintiff's counsel on January 20, 2014, pointing out the case law supporting a motion to compel arbitration, (R. 18-4, Ex. 3, Jan. 20, 2014 Letter); (4) Defendants' counsel informed the Court during a status hearing on January 28, 2014 that this case should be before an arbitrator and that he did not want to waive his clients' right to proceed with arbitration by engaging in additional discovery, (R. 33, Jan. 28, 2014 Tr. at 6:19-20; 7:8-9); and (5) Defendants' counsel referenced the motion to compel arbitration before

the Court during a status hearing on February 7, 2014, (R. 34, Feb. 7, 2014 Tr. at 4:19-20). The record suggests that Defendants clearly demanded arbitration by "mention[ing] [their] desire to arbitrate at every turn"; "[g]iven this candidness, it is hard to see how [Plaintiff] could have believed that [Defendants] did not desire arbitration." *Kawasaki*, 660 F.3d at 996.

Additionally, Defendants objected to Plaintiff's motion for expedited discovery at the hearing on January 16, 2014. (R. 32, Jan. 16, 2014 Tr. at 5:1-8:17). Thus, Defendants' request for additional time to respond to the expedited discovery—after the Court granted Plaintiff's motion for expedited discovery—does not represent an intent to proceed with litigation. Given Defendants' repeated requests for arbitration, their participation in discovery as well as their compliance with the temporary restraining order does not negate their clear intent to arbitrate. In fact, the Court finds it particularly disingenuous for Plaintiff to raise the argument that Defendants have waived their right to arbitrate because they requested an extension to participate in discovery—the Court twice requested to know whether Plaintiff would attempt to assert the waiver argument if Defendants participated in discovery, and Plaintiff's counsel responded in the negative both times. The first time was during the hearing on Defendants' motion to quash a subpoena on January 28, 2014:

> THE COURT: I guess my question to you [Plaintiff's counsel] is are you going to take the position that somehow discovery in this case has resulted in waiver of the defendant's right to invoke the arbitration clause?

> MR. CHABAN: If not taking that position would allow the discovery to move forward now, we will agree not to take that position . . . .

(R. 33, Jan. 28, 2014 Tr. at 5:10-17). The second time was during the hearing on Defendants' motion to stay discovery or, alternatively, to extend time to respond to Plaintiff's discovery on February 7, 2014:

> THE COURT: I think I asked this question of plaintiff's counsel last time. I

17

think plaintiff's counsel agreed last time that this discovery being produced by the defendant would not be used to argue that somehow he had waived his right to arbitration.

MR. WEIS: Absolutely not.

THE COURT: Okay. With that understanding, I'm going to extend the time – I'm not going to stay discovery.

(R. 34, Status Hr'g Tr. at 7:8-15). Plaintiff attempts to clarify in its sur-reply that it is not

arguing that Defendants waived their right to arbitrate because they participated in discovery but

is instead arguing that Defendants waived their right because they requested an extension to

respond to discovery. (R. 37-1, Pl.'s Sur-Reply at 2-3.) The Court finds this distinction

meaningless; asking for extensions to respond to discovery is a regular part of participating in the

discovery process. The Court is not persuaded by Plaintiff's attempt to excuse its

misrepresentations to the Court.

Considering the totality of the circumstances in this case, the Court finds that Defendants

did not act inconsistently with their right to arbitrate and did not waive their right to arbitrate.

## V.     Whether to compel arbitration and stay proceedings

The FAA provides that upon establishing that a written agreement to arbitrate exists and

that the arbitration agreement applies to the disputes at hand, a court must compel arbitration

upon the petition of "[a] party aggrieved by the alleged failure, neglect, or refusal of another to

arbitrate under a written agreement for arbitration[.]" 9 U.S.C. § 4; *Zurich Am. Ins.*, 417 F.3d at

687. As a prerequisite, the party demanding arbitration should first "provide written notice of

the demand so that responding parties may agree to arbitrate and thus avoid court involvement."

*Marzano v. Proficio Mortg. Ventures, LLC*, 942 F. Supp. 2d 781, 798-99 (N.D. Ill. 2013). If a

court decides to compel arbitration, it "shall on application of one of the parties stay the trial of

action until such arbitration has been had in accordance with the terms of the agreement[.]" 9

U.S.C. § 3. The Seventh Circuit has instructed that "the proper course of action when a party

seeks to invoke an arbitration clause is to *stay* the proceedings pending arbitration rather than to

dismiss outright." *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 732 n.7 (7th Cir. 2005);

*see also Hoenig*, 2013 WL 5701400, at *6 (citing *Tice v. Am. Airlines, Inc.*, 288 F.3d 313, 318

(7th Cir. 2002)).

Here, Defendants have alleged that Plaintiff refused to arbitrate and have petitioned the

Court to compel arbitration. (R. 18, Defs.' Mot. at 8.) Specifically, Defendants' counsel sent

Plaintiff's counsel an e-mail and a written letter requesting that the parties proceed to arbitration.

(*Id.* at 8-9; R. 18-3, Ex. 2, Jan. 14, 2014 Email; R. 18-4, Ex. 3, Jan. 20, 2014 Letter.) Plaintiff's

counsel sent a written reply confirming that it did not agree to Defendants' request to compel

arbitration: "If you feel the best use of your clients' resources is to file a motion to compel[,]

then file your motion[,] as you do not have our agreement." (R. 18-5, Ex. 4, Jan. 21, 2014 Letter

at 2.) Plaintiff made clear its effort to proceed with litigation by filing its complaint in court,

requesting expedited discovery, and requesting that this Court deny Defendant's motion to

compel. (R. 1, Compl; R. 8, Pl.'s Mot. Expedited Disc.; R. 30, Pl.'s Resp.) Plaintiff has clearly

refused to arbitrate.

Accordingly, the Court must compel arbitration and stay the proceedings rather than

dismiss this case outright.

## VI.     Whether to grant attorneys' fees

Defendants request that the Court sanction Plaintiff by awarding Defendants their

reasonable attorneys' fees and costs in moving to compel arbitration "for [Plaintiff's] staunch

and bad faith refusal to submit this dispute to binding arbitration, its sudden disavowment of the

Agreement . . . and its claim that Defendants have waived their right to arbitrate by responding to

discovery, when it had already stipulated that it would not argue waiver." (R. 35, Defs.' Reply at 13.)

The "American Rule" provides that, in the absence of a statute specifying otherwise, "each party must pay its own lawyers[.]" *Badillo v. Cent. Steel & Wire Co.*, 717 F.2d 1160, 1165 (7th Cir. 1983). However, a federal court may invoke its inherent power to "assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1975)). Courts may use this inherent power "to protect the orderly administration of justice and to preserve the dignity of the tribunal." *Magnus Elecs., Inc. v. Masco Corp. of Ind.*, 871 F.2d 626, 632 (7th Cir. 1989) (quoting *Kleiner v. First Nat'l Bank*, 751 F.2d 1193, 1209 (11th Cir. 1985)). Nevertheless, a court must exercise restraint and discretion when invoking this power. *Chambers*, 501 U.S. at 44.

Here, Plaintiff twice affirmed to the Court that it would not argue that Defendants waived their right to arbitrate if Defendants participated in expedited discovery, and then proceeded to argue precisely that. (R. 33, Jan. 28, 2014 Tr. 5:10-17; R. 34, Feb. 7, 2014 Tr. 7:8-15.) While the Court finds Plaintiff's behavior in this respect to be unacceptable, Plaintiff's misrepresentations alone are not enough to warrant sanctions. The Court cannot find that Plaintiff proceeded in bad faith in opposing Defendants' motion to compel arbitration or that its particular litigation strategy "abuse[d] the judicial process." *See Barnhill v. United States*, 11 F.3d 1360, 1367 (7th Cir. 1993); *see also Chambers*, 501 U.S. at 45-46. Accordingly, the Court will not award Defendants their reasonable attorneys' fees and costs in moving to compel arbitration.

## CONCLUSION

For the foregoing reasons, Defendants' motion to compel arbitration (R. 18) is

GRANTED. The Court will stay this case pending arbitration.

ENTERED: _____

**Chief Judge Ruben Castillo**
**United States District Court**

Dated: May 28, 2014